**PACIFIC FRUIT & PRODUCE CO., Inc., v. UNITED STATES.**

Civil Action No. 592.

District Court, W. D. Washington, N. D.

April 13, 1945.

Findings of Fact.

I. The plaintiff's, Pacific Fruit and Produce Company, Inc., principal place of business is Seattle, State of Washington, and it was organized under the laws of the State of Delaware in 1931 under the name of General Fruit Corporation. Pursuant to a merger agreement, dated December 2, 1935, the plaintiff changed its name to Pacific Fruit and Produce Company, Inc. Prior thereto the General Fruit Corporation was the owner of all of the capital stock, both common and preferred, of the Pacific Fruit and Produce Company, a Washington corporation, and all of this stock was cancelled on January 1, 1936. The plaintiff corporation had 131,293 shares of common stock issued and outstanding and this stock was cancelled and converted into the same number of shares with a par value of $10.00 each. Under the merger agreement, dated December 2, 1935, all of the assets of the Pacific Fruit and Produce Company were acquired, as of January 1, 1936, by the plaintiff, Pacific Fruit and Produce Company, Inc., and it assumed all of the liabilities of the Pacific Fruit and Produce Company, and the agreement specifically provided that all rights of creditors and all liens upon any property of the Pacific Fruit and Produce Company should be preserved, unimpaired and all debts, liabilities and duties of that corporation should be henceforth attached to and be enforced against the plaintiff corporation, Pacific Fruit and Produce Company, Inc., to the same extent as if said debts, liabilities and duties had been incurred or contracted by it.

The Pacific Fruit and Produce Company had issued 850,000 par value, six per cent serial gold notes on December 1, 1927,

which was one of the liabilities so assumed by the plaintiff corporation under the mer-, ger agreement. The National Bank of Commerce of Seattle, Washington, was made trustee for these notes and Article I of the note indenture reads, in part, as follows:

"Article I.

"Section 1. The aggregate face amount of all the notes issued hereunder shall not exceed the sum of eight hundred fifty thousand dollars ($850,000.00). The notes shall be known as the Six Per Cent. Serial Gold Notes of the Company, shall be substantially of the tenor and effect hereinbefore recited, and shall be in the denomination of one thousand dollars ($1,000.00) or of five hundred dollars ($500.00).

"There shall be six hundred fifteen (615) notes of the denomination of one thousand dollars ($1,000.00) each, numbered from M–1 upwards consecutively and continuously, thirty (30) of which shall mature and be payable on the 1st day of December, 1928, and thirty (30) of which shall mature and be payable on the first day of June and the first day of December of each year thereafter up to and including the 1st day of June, 1933; thirty-five (35) of which shall mature and be payable on the 1st day of December, 1933, and thirty-five (35) of which shall mature and be payable on the first day of June and the first day of December of each year thereafter up to and including the 1st day of December, 1937.

"There shall be four hundred seventy (470) notes of the denomination of five hundred dollars ($500.00) each, numbered from D–1 upwards consecutively and continuously, twenty (20) of which shall mature and be payable on the 1st day of December, 1928, and twenty (20) of which shall mature and be payable on the first day of June and the first day of December of each year thereafter up to and including the 1st day of June, 1933; thirty (30) of which shall mature and be payable on the 1st day of December, 1933, and thirty (30) of which shall mature and be payable on the first day of June and the first day of December of each year thereafter up to and including the 1st day of December, 1937."

Section 15 of Article II of the indenture reads as follows:

"Article II.

"Section 15. That in case of any default in the payment of any of the notes or any interest thereon, it will not during the existence of such default, declare or pay any dividends upon any of its capital stock. Nor will it pay any dividends upon any of its common stock or make any payments by way of bonuses or gratuities to any of its employees or stockholders other than dividends upon its preferred stock unless an amount of money sufficient to pay all of the next maturing semi-annual payments of principal and interest of the notes shall first have been set aside for, and thereafter applied to, the payments last mentioned."

II. The plaintiff's total obligations evidenced by notes on May 1, 1936, amounted to $2,416,164.20, a part of which it retired as follows:

| Creditors | Amount Retired by Payment | |
| --- | --- | --- |
| | 1936 | 1937 |
| *6% Serial Gold Notes | $ 100,000.00 | $100,000.00 |
| Seattle-First Nat. Bank | 250,000.00 | – – |
| Bank of California | 200,000.00 | – – |
| Nat. Bank of Commerce | 200,000.00 | – – |
| Peoples Bank & Trust Co. | 50,000.00 | – – |
| First Security—commercial paper | 100,000.00 | – – |
| Conrad Bruce & Company | 280,000.00 | –. – |
| Palmer Stacy-Merrill | 14,108.79 | 14,108.79 |
| Bank of Manhattan | – – | 250,000.00 |
| Notes Payable | – – | 114,950.00 |
| Total | $1,194,108.79 | $479,058.79 |

* Payments made on serial gold notes in accordance with the provisions in the above-mentioned note indenture, and there had been no default in the payment of these notes.

At the beginning of years 1936 and 1937 plaintiff had cash on hand in the amounts of $410,135.15 and $470,227.57, respectively, and during said years it paid dividends in the amounts of $393,879.00 and $425,000.29, respectively. Plaintiff's adjusted taxable net income for said years was $622,562.68 and $551,681.77, respectively. In its returns, plaintiff reported an aggregate paid in and earned surplus of $2,671,892.46 on December 31, 1935, $2,229,009.93 on December 31, 1936, and $615,881.93 on December 31, 1937.

III. On March 15 and May 15, 1937, plaintiff filed with the then Collector of Internal Revenue for the District of Washington, Thor W. Henricksen, a tentative corporation income and excess profits tax return and a completed return, respectively, for the year 1936. The completed return disclosed a net income of $578,008.59, total normal tax of $60,041.29, surtax on undistributed profits of $13,325.50 and a total tax liability of $73,366.79, which amount was duly assessed and paid as follows:

| Year | Amount | | Date Paid |
|------|--------|-----|-----------|
| 1936 | $18,390.20 | (tax) | Mar. 15, 1937 |
| 1936 | 18,293.20 | " | June 15, 1937 |
| 1936 | 18,341.69 | " | Sept. 15, 1937 |
| 1936 | 18,341.70 | " | Dec. 14, 1937 |

IV. On March 15, and May 14, 1938, the plaintiff filed with the aforesaid Collector of Internal Revenue a tentative and completed corporation income and excess profits tax returns, respectively, for the year 1937. The completed return disclosed a net income of $534,118.31, normal tax of $59,832.75, surtax on undistributed profits of $3,542.81, and a total tax liability of $63,375.56, which amount was duly assessed and paid as follows:

| Year | Amount | | Date Paid |
|------|--------|-----|-----------|
| 1937 | $16,097.23 | (tax) | Mar. 15, 1938 |
| 1937 | 15,590.55 | " | June 14, 1938 |
| 1937 | 15,843.89 | " | Sept. 13, 1938 |
| 1937 | 15,843.89 | " | Dec. 15, 1938 |

V. After a field investigation, plaintiff was advised by a 30-day letter, dated November 16, 1938, of a proposed deficiency in tax of $12,838.80 for 1936, to which proposed deficiency plaintiff filed a protest on January 25, 1939. On January 26, 1939, the plaintiff was furnished a copy of the Revenue Agent's report indicating a proposed deficiency in tax of $4,351.34 for 1937. A conference with respect to certain issues not involved in the instant suit was had in the Revenue Agent's office on April 3, 1939, and as a result of that conference, the proposed deficiency for 1936 was reduced to $12,553.12. The 1936 deficiency, plus interest of $1,577.51, or a total of $14,130.63, was paid on April 19, 1939, and the 1937 deficiency, plus interest of $221.21, or a total of $4,572.50, was paid on January 21, 1939. The assessments in those amounts were made by the Commissioner on April 22, 1939, and January 28, 1939, respectively.

VI. On March 15 and May 9, 1940, the plaintiff filed an original and amended 1936 refund claims, respectively, and said amended claim, as grounds for refund, alleged:

"The amount of Corporate obligations retired during 1936 (in existence before May 1, 1936) should be deducted Line 30 Form 1120—1936—Corporate obligations retired amounted to $1,194,108.79 in 1936. The application of this amount against adjusted net income would eliminate the Surtax on Undistributed Profits amounting to $19,195.51."

VII. On May 17, 1940, plaintiff filed a 1937 refund claim and, as grounds for refund, alleged:

"The amount of corporate obligations retired during 1937 (in existence before May 1, 1936) should be deducted on Line 28, Form 1120, Corporation Income & Excess Profits Tax Return for the year 1937. The corporate obligations retired in 1937 amounted to $479,058.79. The application of this amount against the adjusted net income would entirely eliminate the Surtax on Undistributed profits, amounting to $5,259.63."

VIII. By letters dated December 13, 1940, and February 19, 1941, the Commissioner of Internal Revenue advised the plaintiff that its claims for refund for 1936 and 1937, respectively, were disallowed and rejected, and the above suit was commenced on September 25, 1942.

On September 14, 1943, there was filed with the Collector of Internal Revenue a document entitled "Petitioner's Claim for Refund," and, as additional grounds for refund, alleged:

"That Section 14(a) and Section 26 of the Revenue Act of 1936 have been amended by Section 501 of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Acts, the terms

622

of which entitled the petitioner to a refund of the within described taxes, together with interest from the date of payment. That this petition for refund is submitted by virtue of the terms of the 1942 Revenue Act, requiring a petition to the Collector of Internal Revenue for the refund of said taxes erroneously paid."

From the foregoing Findings of Fact, the Court makes the following

### Conclusions of Law.

I. That this Court has jurisdiction of the parties and subject matter involved.

II. That the plaintiff was not entitled to a credit under the provisions of section 26(c) (2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 835, in determining the amount of undistributed profits subject to tax for the years 1936 and 1937.

III. That the plaintiff was not entitled to a credit under the provisions of section 26(c) (1) of the Revenue Act of 1936, in determining the amount of undistributed profits subject to tax for the years 1936 and 1937.

IV. That the plaintiff was not entitled to any additional credits under the provisions of section 501 of the Revenue Act of 1942, amending sections 14(a) and 26(c) of the Revenue Act of 1936, for the years 1936 and 1937.

Ryan, Askren & Mathewson and William J. Madden, all of Seattle, Wash., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and James P. Garland, Sp. Assts. to Atty. Gen., and J. Charles Dennis, U. S. Atty. and Thomas R. Winter, Sp. Asst. to Chief Counsel, Bureau of Internal Revenue, both of Seattle, Wash., for defendant.

BLACK, District Judge.

Now we come to the matter of Pacific Fruit & Produce Company, Inc., versus United States of America. The matters in issue in this action have been very exhaustively presented by counsel. The issue is one that certainly would justify a carefully written opinion. I haven't had time as yet to prepare a written opinion. If I do not give a decision today, I probably will have no opportunity to give a decision, written or oral, for a number of weeks by reason of other pressing matters requiring my attention and by virtue of being required to hold court for a number of weeks outside the state. I think it is far prefer-able that counsel should know the Trial Court's conclusion, regardless of whether or not counsel feel that any language has been used which should be commended. It, therefore, is my intention to make my decision brief so that the parties may be aware of the ultimate result in this Court. The decision in this case has been delayed sufficiently long already by reason of the nature of the dispute. It should not be delayed longer merely in order to afford a chance to file a memorandum opinion.

I have considered the question, the facts as agreed, the arguments of counsel and their citations as they have respectively submitted same. I am of the opinion that the plaintiff is not entitled to recover. My decision therefore will be that plaintiff's action should be dismissed. I haven't determined whether or not plaintiff is entitled to maintain the action. Plaintiff contends that the history of the assumption by plaintiff of an obligation of a previous corporation was such and the assumption was of sufficiently early enough date as to permit plaintiff to maintain this action. The Government contends that the decisions of the courts are to a contrary effect. I am far from convinced that the Government is right in that respect. However, I am not convinced that the plaintiff is correct. As I read the law and regulations and the decisions, it is not necessary that I decide that particular phase of this case.

■ As I see it, the plaintiff is not within the language of the exemption. Under the holding of Helvering v. Ohio Leather Company, 317 U.S. 102, 63 S.Ct. 103, 87 L.Ed. 113, the plaintiff has failed to show that there was a written contract executed by plaintiff prior to May 1, 1936, or by any predecessor of plaintiff prior to May 1, 1936, which contained a provision as required dealing "with the disposition of earnings and profits of the taxable year," or providing that a portion of the earnings and profits of the taxable year or at all "be paid within the taxable year in discharge of a debt," or "be irrevocably set aside within the taxable year for the discharge of a debt."

■ The decision of Rogan v. Walter Wanger Pictures Company, 9 Cir., 143 F.2d 459, is, as I read it, opposed to the contention of plaintiff. Under the decisions it was the burden of the plaintiff to show that it was strictly within the terms of the provision before it could be entitled to recover in this action. A proceeding of

this kind depends upon the language of the law involved. There is no room for consideration as to what the law should have been. To me, the conclusion is inescapable that the plaintiff has failed to sustain the burden on the merits, irrespective of the question of whether the plaintiff is or is not entitled to maintain the action at all.

The decision, therefore, is that the action shall be dismissed.